IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID P. CUCCHI, | |
|---|---|
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 17-01597 |
| ROBERT J. KAGEL, *et al.* | |
| *Defendants.* | |

**PAPPERT, J.** March 2, 2018

**MEMORANDUM**

David Cucchi sued Robert Kagel, John Cocchi, Michelle Achenbach and Chester County, Pennsylvania, alleging that termination from his County position violated his First Amendment rights, the Pennsylvania Whistleblower Law, and Pennsylvania public policy. (Am. Compl., ECF No. 3.) Defendants filed a motion to dismiss Cucchi's Amended Complaint (Mot., ECF No. 10) which the Court, after reviewing the record and holding oral argument, grants in part and denies in part. Cucchi's First Amendment claim is dismissed without prejudice and Cucchi may file a Second Amended Complaint consistent with this Memorandum on or before March 16. Defendants' motion is denied with respect to the whistleblower claim but the claim for retaliatory discharge in violation of public policy is dismissed with prejudice.

I

Chester County Department of Emergency Services ("Emergency Services") hired Cucchi on August 22, 2016 as a technical communication specialist, and he immediately began a probationary period. (Am. Compl. ¶ 13.) The following day, Emergency Services launched its new Computer Aided Dispatch ("CAD") System. The

1

CAD System allowed Chester County police, fire and emergency medical services to use laptops in public safety vehicles to access and share confidential information from restricted databases, including the Criminal Justice Information Services ("CJIS") and the Commonwealth Law Enforcement Assistance Network ("CLEAN"). (*Id.* ¶¶ 14–16, 21.) CJIS and CLEAN both include policies that impose minimum security requirements on any department with access to those databases. (*Id.* ¶¶ 14–16, 21.)

Cucchi believed that the CAD System lacked adequate safeguards and security features, making it vulnerable to hacking and otherwise violated security requirements imposed by the CJIS and CLEAN policies. (*Id.* ¶¶ 32–33.) Cucchi suggested to John Cocchi, Assistant Deputy Director of Emergency Services, that a security program be installed on all laptops in Chester County public safety vehicles. (*Id.* ¶¶ 3, 34.) Cucchi was given permission to begin installing the program on some of the laptops, but Cocchi instructed him not to discuss CAD's purported deficiencies. (*Id.* ¶ 35.)

On December 2, 2016, Cucchi attended a public luncheon for information technology professionals. (*Id.* ¶ 39.) While there he met with two agents from the Federal Bureau of Investigation with whom he discussed the CAD System, including its security deficiencies. (*Id.* ¶ 41.) Following the luncheon, Cucchi met with five Chester County directors, including Cocchi, to discuss CAD's security shortcomings and resulting noncompliance with CJIS and CLEAN. (*Id.* ¶ 46.) Cocchi again told Cucchi not to discuss the CAD System's security deficiencies at an upcoming meeting of Chester County police chiefs. (*Id.* ¶ 47.)

Frustrated by the response from Emergency Services and "seeking counsel," Cucchi met with Carl McIntyre, a personal acquaintance and officer in the West

Chester Police Department. (*Id.* ¶ 51.) Cucchi told McIntyre of the CAD System's inadequacies, which caused the West Chester Police Department to request that Cucchi install the security program on all laptops in West Chester public safety vehicles. (*Id.* ¶ 52.) Cucchi had similar conversations with officers from the Parkesburg and West Chester University police departments, also resulting in the installation of the security program in both departments' laptops. (*Id.* ¶¶ 54–57.) Cucchi alleges that both Cocchi and Emergency Services Director Robert Kagel became aware of these conversations. (*Id.* ¶¶ 3, 53, 55, 58.)

On January 6, 2017, Cucchi emailed Michele Achenbach, Chester County's Director of Human Relations and Performance Management, requesting a meeting to discuss the CAD System. (*Id.* ¶59.) He subsequently met with a representative from Human Relations to whom he expressed his concerns about the CAD System and noncompliance with the CJIS and CLEAN policies. (*Id.* ¶¶ 60–61.) On January 12, 2017, Cucchi was moving computer hardware when he injured his back. (*Id.* ¶¶ 62–64.) Cucchi told Cocchi of his injury and immediately went to the doctor. (*Id.* ¶¶ 65–67.) After his doctor's visit, Cucchi was terminated for his "inability to maintain the standards of performance and behavior during [the] probationary period of employment." (*Id.* ¶¶ 68–71.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

3

plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal,* 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words,

4

"courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

III

A

In the first count of his Amended Complaint, Cucchi alleges that the defendants violated his First Amendment rights by firing him for discussing the CAD System with the FBI agents at the luncheon and with Officer McIntyre of the West Chester Police Department. Specifically, Cucchi asserts a First Amendment retaliation claim against the individual defendants, which requires pleading facts that show "that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)).

i

The Court must first determine whether Cucchi's speech was protected by the First Amendment. As a public employee, his speech is protected if: "'(1) in making it, [he] spoke as a citizen, (2) the statement involved a matter of public concern, and (3)

the government employer did not have 'an adequate justification for treating [him] differently from any other member of the general public' as a result of the statement he made." *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (quoting *Hill*, 455 F.3d at 241–42).  The parties dispute only whether Cucchi was speaking as a citizen or an employee when he shared his concerns about the CAD System with the FBI agents and McIntyre.  The critical question is therefore "whether the speech at issue is itself ordinarily within the scope of the employee's duties, not whether it merely concerns those duties."  *Lane v. Franks*, 134 S. Ct 2369, 2379 (2014); *see also Flora*, 776 F.3d at 180 (finding speech protected because it "was not part of the work he was paid to perform on an ordinary basis.").  This is a practical inquiry, and the Third Circuit Court of Appeals has articulated factors to consider in this analysis, including: (1) whether the speech relates to "special knowledge" acquired through the job; (2) whether the employee raises complaints about issues related to his job responsibilities "up the chain of command" at work; (3) whether the speech fell within the employee's work responsibilities; and (4) whether the speech was in furtherance of the employee's designated duties.  *Gorum*, 561 F.3d at 185–86 (citing *Foraker v. Chaffinch*, 501 F.3d 231, 240–43 (3d Cir. 2007)).

Applying these factors, Cucchi spoke as a citizen in his conversations with the FBI agents and McIntyre.  Both conversations relied on "special knowledge" Cucchi acquired through his job, but that is not dispositive because "speech by public employees 'holds special value *precisely because* those employees gain knowledge of matters of public concern through their employment."  *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 989 (3d Cir. 2014) (quoting *Lane*, 134 S. Ct. at 2379

6

(emphasis in original)). Moreover, viewing the facts in the light most favorable to Cucchi, the other three factors lead to the conclusion that he spoke as a citizen. Cucchi was not raising concerns "up the chain of command" because neither the FBI agents nor McIntyre were Cucchi's superiors. Further, there is nothing to indicate that Cucchi was responsible for relaying security concerns to the FBI or McIntyre, and reporting such concerns did not further his duties as a technical communication specialist.

Defendants argue that Cucchi spoke as an employee because both conversations were an ordinary corollary to his position. (Mot. at 11–12.) "[A]n employee does not speak as a citizen if the mode and manner of his speech are possible only as an ordinary corollary to his position as a government employee…." *De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017). Cucchi's speech, however, occurred during two private conversations, a mode and manner of speaking available even without his position with the County. *See, e.g.*, *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231 (3d Cir. 2016) (finding police officer did not speak as citizen when objecting to a policy by means of "police department counseling forms"); *see also Bradley v. W. Chester Univ. of Pennsylvania State Sys. of Higher Educ.*, 880 F.3d 643, 652 (3d Cir. 2018) (finding employee did not speak as citizen when she attended closed meeting, at direction of her direct supervisor, and discussed an employment responsibility).

ii

The Court next assesses whether Cucchi has sufficiently alleged that his speech was a substantial factor in the alleged retaliatory action. *See Gorum*, 561 F.3d at 194; *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006). Cucchi can show this requisite "causal link" by either "(1) an unusually suggestive temporal proximity between the

7

protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link," or (3) "from the 'evidence gleaned from the record as a whole.'" *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). In order to be probative of causation, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (quoting *Estate of Smith v. Marasco*, 318 F.3d 487, 512 (3d Cir. 2003)). Additionally, Cucchi must allege that each defendant was aware of the protected conduct. *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

Cucchi has not sufficiently alleged that the defendants were aware of his conversations with the FBI agents and McIntyre. First of all, Cucchi does not claim that any of the defendants knew, at any time, about the conversation with the FBI agents. As for the conversation with McIntyre, Cucchi makes the conclusory allegation that "Kagel and Cocchi both became aware" of that conversation. (Am. Compl. ¶ 53.)[1] Cucchi alleges no facts to render this assertion plausible and it is not entitled to the presumption of truth. *See Hammond v. City of Wilkes Barre*, 628 Fed. App'x 806, 808 (3d Cir. 2015) (declining to credit allegation that defendants "were aware of [plaintiff's] protected activities").

Regardless, Cucchi fails to allege any facts which allow the Court to infer that the timing of the alleged employment action suggests that retaliation motivated his termination. Cucchi merely concludes that "[a]s a direct and proximate result of [the]

---

[1] Cucchi never alleges that Achenbach was aware of his conversations with the FBI agents and McIntyre, mandating dismissal of the retaliation claim against Achenbach.

8

exercise of his rights to speech," he was fired. (Am. Compl. ¶ 77.) Cucchi claims he spoke with the FBI agents on December 2, 2016, but the Amended Complaint contains no information about when the purported conversation with McIntyre occurred. *See* (Am. Compl. ¶¶ 39, 59, 62). The Court can at most hypothesize from the sequence of allegations in the Amended Complaint that the conversation with McIntyre took place at some point between the discussion with the FBI agents and Cucchi's January 12, 2017 firing. He does not allege *any* facts which purport to demonstrate the time between the conversation with McIntyre and his termination, and the Court cannot reasonably infer that the temporal proximity between the two is unusually suggestive of a retaliatory motive. Moreover, Cucchi does not allege that he experienced any pattern of antagonism between the conversation with McIntyre (whenever it was) and his termination.[2]

B

The Court analyzes Cucchi's First Amendment claim against Chester County under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under 42 U.S.C. § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or

---

[2] The individual defendants argue that they are protected by qualified immunity. To overcome qualified immunity, Cucchi must "plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established' at the time of the challenged conduct." *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). Because Cucchi fails to allege the violation of a constitutional right, the Court need not address the qualified immunity defense at this time.

9

informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). A successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658.

Inasmuch as Cucchi fails to state a claim for an underlying constitutional violation, his *Monell* claim fails accordingly. In any event, he must also allege a policy or custom attributable to the municipality and plead facts sufficient to show that the policy or custom caused the alleged constitutional violation. *See Monell*, 436 U.S. at 658. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citations and quotation omitted). Cucchi does not allege a custom at all, and instead focuses on policy. He makes the bald assertion that the defendants "acted as final decision-makers on behalf of Defendant Chester County," (Am. Compl. ¶ 73), without alleging any additional facts in support of his conclusion that the defendants had that level of authority. *See Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (defining policymaker as "an official who has the power to make policy [and] is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."). Moreover, Cucchi has not identified a policy attributable to the County, or how that policy caused his alleged constitutional violation.

IV

Cucchi's second cause of action asserts a claim under the Pennsylvania Whistleblower Law, 43 Pa. Const. Stat. § 1341 *et seq.*; he contends he was fired for reporting violations of the CJIS and CLEAN policies to a representative from Human Relations. (Am. Compl. ¶ 83.) The Whistleblower Law makes it unlawful for an employer to "discharge, threaten or otherwise discriminate or retaliate against an employee…because the employee…makes a good faith report…to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body…." 43 Pa. Cons. Stat. § 1423(a). Defendants' Motion turns on the whether Cucchi reported a "wrongdoing," which is defined in the statute as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. § 1422. Defendants contend Cucchi has not alleged a report of "wrongdoing" because he has not alleged the violation of a "regulation." (Mot. at 19.) The statute does not define "regulation," but Black's Law Dictionary defines the term as "[c]ontrol over something by rule or restriction." (10th ed. 2014.)

Cucchi has sufficiently pled a wrongdoing because the Court at this stage cannot conclude that the CJIS and CLEAN policies are not regulations within the meaning of the Whistleblower Law. The CJIS policy is approved by the CJIS Advisory Policy Board and provides "minimum security requirements" for access to the CJIS, requirements applicable "to every individual—contractor, private entity, noncriminal justice agency representative, or member of a criminal justice entity—with access to, or

11

who operate in support of" CJIS. (Am. Compl., Ex. 1 at 2, 12, ECF No. 3-1.) CLEAN is administered by the Pennsylvania State Police, and contains "regulations…necessary for the efficient and effective operation of the CLEAN and CJIS systems." (Am. Compl., Ex. 2 at 4, ECF No. 3-2.) CLEAN further provides that "[a]ny agency accessing CLEAN Services shall be responsible for enforcing system security standards…." (*Id.* at 11.) Both policies govern agencies with access to CJIS or CLEAN, imposing security requirements that Emergency Services was arguably required to enforce. *See Gray v. Hafer*, 651 A.2d 221, 224 (Pa. Cmwlth 1994) (explaining that regulation must be "of the type that the employer is charged to enforce.").

Defendants cite *Connor v. Clinton Cty. Prison*, 963 F. Supp. 442, 451 (M.D. Pa. 1997) in support of their argument that the CJIS and CLEAN policies are not regulations. (Mot. at 20.) In *Connor*, the plaintiff was a prison official who alleged that she was fired after reporting violations of an unwritten internal policy. The trial court granted summary judgment for the employer, finding that the violation of an informal, unwritten internal policy did not constitute wrongdoing within the meaning of the Whistleblower Law. *Id.* Unlike the policy in *Connor*, the CJIS and CLEAN policies are more than informal; they are written and adopted by the CJIS Advisory Policy Board and Pennsylvania State Police.

Defendants also argue that this claim should be dismissed because Cucchi failed to specifically identify which provisions of the CLEAN policy were violated. (Defs.' Reply to Resp. at 7, ECF No. 14.) Cucchi claims that he reported to Human Relations that the CAD System suffered from security deficiencies and was in violation of requirements imposed by CLEAN. Taking these allegations as true, these facts are

12

sufficient to permit a reasonable inference that there was an actual violation of the CLEAN policy. *See Stoneback v. ArtsQuest*, No. 12-3286, 2012 WL 4963624 (E.D. Pa. Oct. 17, 2012) (finding adequately plead Whistleblower claim at motion to dismiss stage despite plaintiff's failure to cite any specific statute, regulation or code).

V

Finally, Cucchi alleges that his termination violated Pennsylvania public policy. He contends that he was fired after telling Cocchi of his intention to file a workers' compensation claim for the back injury he sustained that same day. (Am. Compl. ¶¶ 92–93.) This claim is barred by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. § 8541, *et seq.* The Tort Claims Act immunizes municipalities from tort liability. An injured party may recover in limited circumstances, including where the negligent act of the local agency falls within one of eight enumerated categories of exceptions to immunity.[3] 42 Pa. Cons. Stat. § 8542(a); *see also Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000); *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000). Cucchi concedes that a retaliatory discharge claim does not fall within any of the eight exceptions. (Pl.'s Resp. in Opp. at 29–30.) He relies instead on *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998), which held that "a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits." 716 A.2d at 1238. Although *Shick* established a common law action for wrongful termination in Pennsylvania, the claim recognized is not an exception to, or otherwise exempt from, the Tort Claims Act. *See Haiden v. Greene Cty. Career & Tech. Ctr.*, No. 08-1481, 2009 WL 2341922, at *3

---

[3] The eight exceptions are for: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. § 8542(b).

13

(W.D. Pa. July 27, 2009) (holding wrongful termination claim barred by the Tort Claims Act); *Kranch v. Tamaqua Area Sch. Dist.*, No. 08-83, 2009 WL 4795563, at *8–9 (M.D. Pa. Dec. 7, 2009) (same).

Alternatively, Cucchi argues that the County's retaliatory discharge constitutes "willful misconduct" within the meaning of § 8550 of the Tort Claims Act, which withdraws immunity for injuries caused by "crime, actual fraud or willful misconduct…." 42 Pa. Cons. Stat. Ann. § 8550; *see also* (Pl.'s Resp. in Opp. at 31). Courts have consistently held that § 8550 "only abolishes immunity for willful misconduct which pertains to local agency *employees*…and thus does not affect the immunity of local agencies." *Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553, 557 (E.D. Pa. 2014) (emphasis added) (quoting *King v. Breach*, 540 A.2d 976, 979 (Pa. Cmwlth Ct. 1988)); *see also Banks v. City of Philadelphia*, No. 14-82, 2016 WL 1238783, at *4 (E.D. Pa. Mar. 30, 2016).

An appropriate order follows.

BY THE COURT:


  */s/ Gerald J. Pappert*
 GERALD J. PAPPERT, J.